**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RONALD NICHOLAS, JR.**                    **CIVIL ACTION**

**VERSUS**                                  **NUMBER: 20-1968**

**SOCIAL SECURITY ADMINISTRATION**          **SECTION "M" (5)**

## REPORT AND RECOMMENDATION

Plaintiff Ronald Nicholas, Jr. filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner finding that Plaintiff's disability ended on March 31, 2017 under Section 223(f) of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment, and the issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.      **BACKGROUND**

Plaintiff filed his original application for Disability Insurance benefits ("DIB") on May 25, 2012, alleging a disability onset date of February 3, 2010. (Adm. Rec. at 242-48). On September 6, 2013, an Administrative Law Judge ("ALJ") concluded that Plaintiff was disabled as of January 14, 2011. (*Id.* at 25). This is the comparative-point decision ("CPD") or, in other words, the most recent favorable determination or decision on a claimant's disability. The ALJ determined that Plaintiff had the following medically determinable impairments: epilepsy and disorders of the gastrointestinal system (pancreatitis). (*Id.*). The ALJ determined that Plaintiff's epilepsy met Listing 11.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Listings. (*Id.*).

On July 11, 2019, ALJ David Shea held an administrative hearing at which Plaintiff, Plaintiff's ex-wife, and a vocational expert ("VE"), Cindy A. Harris, testified. (*Id.* at 83-128). An attorney represented Plaintiff at the hearing. (*Id.*). Plaintiff, born on December 21, 1971, was 47 years old at the time of the hearing. (*Id.* at 242). Plaintiff has at least a high school education, and he has past work experience as an industrial cleaner, conveyor system operator, and construction worker. (*Id.* at 32-33).

On July 31, 2019, the ALJ issued an opinion in which he found that Plaintiff's disability had ended on March 31, 2017 and that Plaintiff had not become disabled again since that date. (*Id.* at 23-34). To determine that Plaintiff was no longer disabled, the ALJ followed an eight-step evaluation process. (*Id.* at 25-32); 20 C.F.R. § 404.1594. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity. (*Id.* at 25). At step two, the ALJ found that, since March 31, 2017, Plaintiff had not had an impairment, or combination of impairments, which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). At step three, the ALJ found that medical improvement occurred on March 31, 2017. (*Id.* at 27); 20 C.F.R. § 404.1594(b)(1). Specifically, the ALJ found that the medical evidence supported a finding that, by March 31, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD. (*Id.* at 27). The ALJ found that the evidence of record revealed that Plaintiff's seizures were controlled with medication and his episodes of pancreatitis had decreased. (*Id.*).

At step four, the ALJ found that the medical improvement was related to the ability to work because, by March 31, 2017, Plaintiff's CPD impairments no longer met or medically

equaled the same listing that was met at the time of the CPD.  (*Id.*); 20 C.F.R. § 404.1594(c)(3)(i).  At step six, the ALJ determined that, since March 31, 2017, Plaintiff has continued to have a severe impairment or combination of impairments.  (*Id.* at 27). Specifically, the ALJ found that Plaintiff's epilepsy caused more than a minimal limitation in Plaintiff's ability to perform basic work activities.  (*Id.*).[1]

Based on the impairments present since March 31, 2017, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff can never climb ladders, ropes, or scaffolds.  (*Id.*).  Additionally, the ALJ concluded that Plaintiff must avoid workplace hazards such as working at unprotected heights and working around moving mechanical parts, and he cannot drive as part of the job.  (*Id.*).

At step seven, the ALJ found that, since March 31, 2017, Plaintiff has been unable to perform his past relevant work as an industrial cleaner, conveyor system operator, and construction worker.  (*Id.* at 32).  At step eight, considering Plaintiff's age, education, work experience, and RFC, and based on the impairments present since March 17, 2017, the ALJ concluded that Plaintiff can perform a significant number of jobs existing in the national economy.  (*Id.* at 33).  Specifically, the ALJ identified the light and unskilled occupations of cashier II, with 842,000 jobs nationally; router, with 53,000 jobs nationally; and marker, with 292,000 jobs nationally.  (*Id.* at 34).  Thus, the ALJ concluded that Plaintiff's disability had ended on March 31, 2017, and Plaintiff had not become disabled again since that date.  (*Id.*).

---

[1] The ALJ did not need to consider step five, which needs consideration only when the ALJ concludes that no medical improvement occurred.  20 C.F.R. § 404.1594(f)(4).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled. On May 4, 2020, the Appeals Council denied Plaintiff's appeal. (*Id.* at 1-4). Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence,

regardless of whether other conclusions are also permissible.  *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey*, 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## III.    ENTITLEMENT TO CONTINUED BENEFITS UNDER THE ACT

A claimant may be found to have had a disability at one point in time but no longer be disabled due to medical improvement, thereby discontinuing the receipt of benefits under the SSA.  *See* 42 U.S.C. § 423(f)(1) (permitting cessation of benefits upon proof of medical improvement and ability to engage in substantial gainful activity).  Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [claimant was] disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1) (noting that the changes must be in the symptoms, signs, and/or laboratory findings associated with the impairment).  In proceedings to terminate disability benefits because of medical improvement, the ultimate burden of proof lies with the Commissioner.  *See Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991) (per curiam).

To determine if the claimant continues to be disabled, the ALJ follows an eight-step evaluation process.  20 C.F.R. § 404.1594.  At step one, the ALJ must determine if the claimant

5

is engaging in substantial gainful activity.  If the claimant is performing substantial gainful activity, and any applicable trial work period has been completed, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(1).  At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does, his disability continues.  20 C.F.R. § 404.1594(f)(2).  If the claimant does not, the ALJ proceeds to step three, at which the ALJ must determine whether medical improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings.  20 C.F.R. § 404.1594(b)(1).  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.  At step four, the ALJ must determine whether medical improvement is related to the ability to work.  20 C.F.R. § 404.1594(f)(4).  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  20 C.F.R. § 404.1594(b)(3).  If it does, the analysis proceeds to the sixth step.  If step five is necessary, the ALJ must determine if an exception to medical improvement applies.  20 C.F.R. § 404.1594(f)(5).  If no exception applies, the claimant's disability continues.  If one of the first group exceptions applies, the analysis proceeds to the next step.  If one of the second group exceptions applies, the complainant's disability ends.  At step six, the ALJ must determine whether all the claimant's current impairments in combination are severe.  20 C.F.R. § 404.1594(f)(6).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work

activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next

step.  At step seven, the ALJ must access the claimant's residual functional capacity based on

the current impairments and determine if he can perform past relevant work.  20 C.F.R. §

404.1594(f)(7).  If the claimant has the capacity to perform past relevant work, his disability

has ended.  If not, the analysis proceeds to the last step, at which the ALJ must determine

whether other work exists that the claimant can perform, given his RFC and considering his

age, education, and past work experience.  20 C.F.R. § 404.1594(f)(8).  If the claimant can

perform other work, he is no longer disabled.  If the claimant cannot perform other work, his

disability continues.

IV.    **ISSUES ON APPEAL**

There are four issues on appeal:

(1)    Whether the ALJ considered the entire record.

(2)    Whether substantial evidence supports the ALJ's finding that Plaintiff has not
had an impairment or combination of impairments that met or medically
equaled the severity of a listed impairment since March 31, 2017.

(3)    Whether substantial evidence supports the ALJ's RFC assessment.

(4)    Whether substantial evidence supports the ALJ's conclusion that jobs exist in
significant numbers in the national economy that Plaintiff can perform since
March 31, 2017.

V.    **ANALYSIS OF THE ISSUES ON APPEAL**

**(1)    Whether the ALJ considered the entire record.**

Plaintiff contends that the ALJ failed to consider his various medical conditions,

including epilepsy, disorders of the gastrointestinal system (pancreatitis), anxiety, and side

effects from medications.  Plaintiff bluntly maintains that his anxiety should have been

"acknowledged" by the ALJ. However, the ALJ expressly found that since March 31, 2017, Plaintiff has the following medically determinable impairments: epilepsy, pancreatitis, and anxiety. (Adm. Rec. at 25). Plaintiff's argument is thus of no avail.

Moreover, the ALJ also explicitly stated that he had considered the "entire record." (*Id.*). The Fifth Circuit has held that courts should consider such statements as true reflections of the ALJ's action. *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record. To the contrary, his decision states expressly that it was made "[a]fter careful consideration of all the evidence," and we see no reason or evidence to dispute his assertion."); *Winston v. Comm'r of Soc. Sec.*, Civ. A. No. 20-2823, 2022 WL 775336, at *9 (E.D. La. Feb. 11, 2022) (same). This Court has no reason to doubt the ALJ's statements after reviewing the his opinion. This argument fails.

> **(2)   Whether substantial evidence supports the ALJ's finding that Plaintiff has not had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment since March 31, 2017.**

Plaintiff argues that the ALJ erroneously found that he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff fails to elaborate on this argument.

Having reviewed the ALJ's opinion and the administrative record, the Court finds that substantial evidence supports the ALJ's finding. As the ALJ noted, the evidence of record reveals that Plaintiff has good control of his seizures with medication. (Adm. Rec. at 30); *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of

disability.") (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).  It is documented that Plaintiff was seizure-free from April 2016 to April 2017. (Adm. Rec. at 609).  Although Plaintiff had three seizures between April and May 2017, Plaintiff reported "doing well" on his medication and that he had been seizure free since taking Keppra and Dilantin.  (*Id.* at 722, 729).  Additionally, progress notes in December 2017 showed that Plaintiff's seizures were stabilized with his usual dose of Keppra and Dilantin, and Plaintiff had been seizure-free since October 2017.  (*Id.* at 729, 733).  In June 2018, Plaintiff continued to be seizure-free. (*Id.* at 727).  Plaintiff again reported having no seizures in August 2018.  (*Id.* at 785).  Progress notes in June 2019 revealed that medical personnel continued Plaintiff on his same medications, and there was no mention of seizures or side effects from medications.  (*Id.* at 792-93).  This Court cannot undo the ALJ's finding regarding listed impairments if it is supported by substantial evidence.  *McCaskill v. Dep't of Health & Human Servs.*, No. 1:14cv24, 2015 WL 1457514, at *7-9 (S.D. Miss. Mar. 30, 2015), *aff'd*, 640 F. App'x 331 (5th Cir. 2016).  Here, the ALJ weighed the evidence, and substantial evidence supports his finding that Plaintiff's seizures were well controlled by medication.

Having considered the above evidence, the ALJ concluded that Plaintiff's epilepsy did not meet the severity described in Listing 11.02 because there was no evidence of a documented pattern of episodes (loss of consciousness and convulsive seizures) that occurs more frequently than once a month despite at least three months of prescribed treatment. (*Id.* at 25).  The ALJ also determined that Plaintiff's epilepsy did not rise to the severity required by Listing 11.02 because there was no evidence of generalized tonic-clonic seizures or dyscognitive seizures occurring at least once a week for at least three consecutive months,

despite adherence to prescribed treatment.  (*Id.* at 25); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02(A).  The ALJ further found that there was no evidence of generalized tonic-clonic seizures occurring at least once every two months for at least four consecutive months, or dyscognitive seizures occurring every two weeks for at least four consecutive months, despite adherence to prescribed treatment, and which included a marked limitation in one of the following: (1) physical functioning; (2) understanding, remembering, or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself.  (*Id.* at 25-26); 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 11.02(C), (D).  Having reviewed the evidence above, the Court finds that the ALJ's conclusions are supported by substantial evidence.

And while Plaintiff filled out multiple Seizure Questionnaires, listing several seizures from 2016, 2017, and early 2018, (*id.* at 301-03, 345-47, 350-52), the ALJ found Plaintiff's reporting inconsistent with the medical evidence of record and afforded the Seizure Questionnaires little weight.  (*Id.* at 31).  It is not the duty of this Court to weigh the evidence – that is the province of the ALJ.  *Garcia v. Colvin*, 622 F. App'x 405, 408 (5th Cir. 2015) ("Our task as a reviewing court is narrow: we must 'scrutinize[ ] the record to determine whether such evidence is present,' but do not reweigh the evidence, evaluate conflicts of evidence, or substitute our judgment for that of the agency.") (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *id.* at 409 ("[I]t is the ALJ's task, not ours, to weigh evidence.").  It was perfectly within the ALJ's province to afford the Seizure Questionnaires little weight.  In sum, the Court finds that substantial evidence supports the ALJ's finding that since March 31,

2017, Plaintiff has not had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 25).

**(3)    Whether substantial evidence supports the ALJ's RFC assessment.**

Plaintiff maintains that the ALJ erred when he concluded that Plaintiff has the RFC to perform the full range of light work. This argument fails for two reasons. First, the ALJ concluded that Plaintiff has the RFC to perform *a full range of work at all exertional levels*. (*Id.* at 27). In addition, while using the phrase "a full range of work," the ALJ included non-exertional limitations in his RFC finding. (*Id.*). Plaintiff can never climb ladders, ropes, or scaffolds, must avoid workplace hazards, such as working at unprotected heights and working around moving mechanical parts, and he cannot drive as part of the job. (*Id.* at 27). To assess Plaintiff's RFC with non-exertional limitations, the ALJ noted that he had considered both medical evidence and opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 404.1529. (*Id.*). The ALJ concluded that the evidence of record as outlined above revealed that Plaintiff's seizures were controlled by his medication. (*Id.* at 30-31, 301, 345, 350, 609, 668, 694, 726, 727, 729, 733, 767, 785, 791-93). The ALJ found that the non-exertional limitations imposed on Plaintiff's RFC assessment were appropriate precautionary restrictions based on the likelihood of Plaintiff suffering a seizure. (*Id.* at 31-32).

Plaintiff argues that three medical providers have concluded that he is disabled. Plaintiff fails to provide any evidentiary support, much less a citation to the administrative record, to support the argument that Plaintiff has been disabled since March 31, 2017. Moreover, it is well-established law that the ultimate decision on disability lies with the ALJ.

*Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).  The final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is "disabled" under the SSA are issues reserved to the Commissioner.  *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC).  Plaintiff's unsupported argument against the ALJ's RFC assessment fails.

      **(4)**    **Whether substantial evidence supports the ALJ's conclusion that jobs exist in significant numbers in the national economy that Plaintiff can perform since March 31, 2017.**

      This Court makes short shrift of this argument.  At the July 11, 2019 hearing, a VE, Cindy A. Harris, testified as to whether a hypothetical individual with Plaintiff's age, education, work experience, and limitations set forth in the ALJ's RFC assessment could perform other work existing in significant numbers in the national economy.  (*Id.* at 122-123).  The VE testified that such an individual could perform the light and unskilled occupations of cashier II, with 842,000 jobs nationally; router, with 53,000 jobs nationally; and marker, with 292,000 jobs nationally (Tr. 123).  This Court finds no fault with the ALJ's reliance on the testimony of the VE.  It is axiomatic that the ALJ is entitled to rely on a VE's knowledge of job requirements.  *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("[W]e agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.").  Moreover, Plaintiff's counsel was given an opportunity to object and cross-examine the VE on the effect of Plaintiff's seizures on his ability to perform the identified jobs, and he did so.  (*Id.* at 124-27).  Even after the examination and cross-examination of the VE, the ALJ concluded that Plaintiff's attorney had questioned her on evidence not consistent with the medical evidence

of record and that the VE had adequately defended her position. (*Id.* at 34). As noted, it was well within the ALJ's province to credit the testimony of the VE. Plaintiff's criticism of the ALJ's finding is unpersuasive.

## VI.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

### NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[2]

New Orleans, Louisiana, this 2nd day of _____ March _____, 2023.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.